THE STATE, WILLIAM B. OGDEN, CHARLES G. SISSON, and ABRAHAM O. ZABRISKIE, prosecutors, *vs.* THE MAYOR AND COMMON COUNCIL OF THE CITY OF HUDSON.

1. Several petitions were presented to the common council of Hudson City for the regulation and grading of different sections of Palisade avenue, and ordinances were passed in compliance with said petitions; before the work was commenced, without any new petition for that purpose, and without any new notice or advertisement, the common council passed a general ordinance " to provide for the regulation of the whole avenue" between the limits which were fixed in the proceeding upon the several petitions, and thereby repealed the ordinances that had been passed concerning the regulating and grading of the different parts thereof. *Held*, that the general ordinance was valid, and authorized the improvements which it provided for.

2. The proposition should be for some class or classes of improvements,

which must be advertised ; but the mode in which the improvement is to be made and its extent is left to the discretion of the com mon council.

3. Where the charter of a city provides that the expense of improvements, when completed, shall be ascertained and assessed by three impartial commissioners, to be appointed by the common council, the corporation has not the power to establish a board of commissioners of assessments who shall act in all cases. The commissioners must be appointed for each specific case.

4. Where a city charter requires property to be assessed to pay for improvements according to the benefits received, it is not sufficient to assess each lot according to its frontage. The commissioners must exercise their judgment as to the amount of benefit each lot receives, and must assess the property accordingly, and the report must show that the assessment has been so made.

*Certiorari* to set aside an ordinance passed by the common council of Hudson City for regulating and grading Palisade avenue, and to set aside the assessments made under said ordinance. [This case was decided at February Term, 1860 but was not received by the reporter in time to be published in the previous volume.]

*A. O. Zabriskie,* for plaintiffs in *certiorari.*

*J. P. Vroom,* for defendants.

The opinion of the court was delivered by

OGDEN, J. Upon the return of the writs in these cases, which purported to bring before the court the proceedings and copies of all papers in the possession of defendants touch-ing the matters in controversy, two classes of objections were argued by council, which it was insisted, in behalf of the prosecutors, are fatal to the assessments—one, involving the proceedings anterior to those which particularly regard the assessments, the other directed against the legality of the assessments themselves.

Upon a careful examination of the points which were made against the validity of the *ordinances* respecting the regulation and grading of Palisade avenue, the first approved the 16th of November, 1855, the second approved

the 20th of December, 1855, the third approved the 10th of March, 1856, the fourth approved on the 1st of May, 1856, and the fifth approved on the 18th of July, 1856, I am of the opinion that the attention of property holders interested in the improvement of the avenue, from the Paterson plank road intersection to the northerly side of the Newark avenue, were sufficiently called to the subject by legal advertisement of the propositions for regulating, &c., the different sections or parts of the avenue which are embraced within the line of the assessment, to enable those who were disposed to object to be duly heard before an appropriate committee, appointed by the mayor and common council of the city. The committee met from time to time at the places designated in the several notices, and no person appearing before them to make objections, ordinances were passed for the improvement of the respective sections to which the several petitions applied.

The work had not been commenced on the 17th of July, 1856, and at a regular meeting of the common council, held on that day, they passed one general ordinance " to provide for the regulation of the whole avenue" between the limits which were fixed in the proceedings upon the several petitions, and thereby repealed the ordinances which had been passed concerning the regulating, grading, &c., of the different parts thereof. There does not appear to have been a petition covering the whole line, nor any fifth notice or advertisement published before the said ordinance was passed.

The object of an advertisement was the giving of information that an improvement was asked for which would affect the interests of the owners of real estate that would be benefited by the same, so that they would appear before the council, or its committee, and make objections or suggestions. It would be an unfair interpretation of the intent of the legislature, as indicated in the 42d section of the charter, to say that the petitioners for

improvements, in opening and in grading and paving streets, can confine the common council to the particular manner of improvement which they may choose to ask for. If such is a fair construction of the section, and several combinations of property holders should present to the council their separate applications for the improvement of a street from one given point to another, but each naming a particular and distinct mode of improvement, the common council could not act, because they could not adopt each plan, and thus all improvement could be prevented.

The proposition should be for some class or classes of improvement, which must be advertised; but the mode in which the improvement shall be made, and its extent, should be left to the discretion of the common council; therefore the fact that some of the petitions asked for plank sidewalks of a given width and description, and others did not, cannot invalidate the last general ordinance, which provides for the laying of sidewalks on both sides of the avenue. The right of the common council to alter the grade for the avenue, as established by supervisors under the former charter, was discussed under this branch of objection ; but I do not think that the ordinance, which repealed the former grade, and adopted one made by Mr. Hexamer, should be brought in question in a collateral manner. It was not introduced nor passed at any of the meetings of the board when the question of the improvements was acted on, and is not necessarily involved in the determination of the validity of those ordinances. No grade is referred to in the petitions ; and if the substitution of a new grade for the old one tended materially to affect the rights of the property holders on the avenue, they should have questioned that ordinance in a legal manner before the sum of over $22,000 had been expended by the public authorities in improving the avenue in conformity with that grade. Knowing, as they were bound to know, that all the expenses for the im-

provements were required by the charter to be assessed upon and paid by the owners of the lands and real estate to be benefited by the same, in proportion to the benefit received, it would be a fraud upon the public authorities, and through them upon the tax-payers of the city, if after an improvement had been made at a great expense upon a particular grade, without objection from or suggestion made by any of the parties to be benefited, that those upon whom the charter fixes the payment of the costs of such improvement could throw off their liability, and make the expenses thereof a public burthen. If they were dissatisfied with the change of the grade, they should have had the ordinance which effected it brought up for review before it became too late for the authorities to correct any mistake which they may have made in their proceedings. Some seventeen months elapsed between the time of the passage of that resolution or ordinance and the meeting, when the street committee reported to the common council that the improvements upon the avenue were completed and were accepted by them, and two years elapsed before the allowance of these *certioraris* were applied for. I am clearly of opinion that the parties acquiesced in the alterations too long to be permitted to impeach the ordinance in a collateral manner. Such a practice would unsettle all proceedings of municipal authorities, and would involve their acts in inextricable difficulties and embarrassments.

Under the second class of objections, several matters were urged as invalidating the assessments, which I will consider *seriatim,* because the views of the court upon each that is tenable may be of value to the parties in their subsequent action.

*First.* Were the commissioners of assessment appointed in conformity with the charter ?

It is provided, in the 42d section of the charter, " that the expenses of such improvements, when completed, shall be ascertained and assessed by three impartial com-

missioners, not interested therein, who shall be appointed by the common council from the residents of the city." It appears, from the returns in these cases, that on the first day of July, 1857, the common council passed " An ordinance to establish a board of commissioners of assessments," who should act in all cases of assessments; and that, on the 1st of October, 1857, the mayor nominated, and the council elected, John G. Ackerman, Jacob Newkirk, and Adolph W. Martin such commissioners. Two objections are raised against the legality of the acts of those persons as commissioners—one, that they were appointed before the work was reported as completed, not as commissioners in the particular case, but as a board to act in all cases which might occur; the other, that it does not appear that they were residents of the city, impartial and not interested in the work.

If these commissioners had been appointed by the common council for this particular duty, by two resolutions setting out their qualification and appointment, in the language used in the two ordinances before us, I should determine that all which was requisite did sufficiently appear; but no such inference can be made from the resolutions appointing a board of commissioners. How was it possible for the common council to say beforehand, or to assume that the three gentlemen whom they then appointed would be disinterested in all the assessments for improvements which might thereafter be made in the city? The council probably fell into the error from reference to the proceedings had in Jersey City, the charter of which originally was similar to that of the City of Hudson in this particular. But in 1854, a supplement was passed repealing so much of the 52d section of the charter as required the appointment of commissioners from time to time, and substituted, in lieu of them, a board of commissioners for assessments, to be composed of one resident freeholder in each ward of the city, with a provision that if one or more of the board should be

interested in any assessment which might be ordered, the common council should appoint some impartial and discreet freeholder or freeholders, residents of those wards, to serve in place of those so interested.

In the charter of Hudson City no such power of substitution is provided for, which omission is a conclusive argument that the legislature did not mean to authorize the appointment of a general board, but contemplated appointments, from time to time, of three impartial, disinterested resident commissioners to make such assessment as it might be ordered.

The objection to the legality of the appointment is well taken.

Another reason urged for setting aside the assessments (and it is the last which I shall notice) is, that the commissioners did not examine into the whole matter, and determine and report in writing to the common council what real estate ought to be assessed for the improvement, and what proportion of the expenses ought to be assessed to each parcel or lot of land benefited by the improvement.

The soundness of this objection against the present assessment must be tested by the report that has been made.

The only document which the commissioners have returned to the common council is a map elaborately made by a surveyor, showing a profile of the part of the avenue which was improved, containing tabular statements of the names of landholders and the number of their lots, with the quantities of cubic yards of earth, &c., removed—the prices for the same—the number of feet of curbing, guttering, and sidewalk, with prices, and a total sum at the end of the line opposite to each name and lot. A grand total is made of twenty-two thousand nine hundred and thirteen dollars and forty-four cents.

Under this statement is placed a certificate, made by the city surveyor of Hudson City, that the quantities were

State v. City of Hudson.

correct; and on another part of the map the following appears—"Certified correct,"—"John G. Ackerman, Adolph W. Martin, Jacob Newkirk, commissioners of assessments."

Does this constitute a report of the performance of the duties required by the charter from the commissioners?

The paper returned by the commissioners is a sufficient fulfillment of their duty in furnishing a map containing each lot assessed, and the name of the owner thereof; but it possesses none of the properties of the report which was required of them. It was their duty to report in terms, by a writing with their signatures, upon all the several matters specified in the section defining their duties, so that their report and the accompanying map would have been two distinct instruments.

The whole thing is manifestly the work of the engineers, bearing no impress of the exercise of judgment by the commissioners. In this proceeding there has been a total failure on the part of the commissioners to execute the duties required by the charter.

The case, in this respect, is on all fours with that of The State, the Water Commissioners of Jersey City, prosecutors, *and* The Mayor and Common Council of the City of Hudson, defendants, in which Justice Vredenburgh delivered the opinion of the court, reviewing the proceedings of commissioners of assessments for the expenses in improving Bergenwood avenue.

That investigation brought up the proper construction of the same section of the charter which we have been considering, and the opinion expressed for the court maintained that distinct and positive duties were required from the commissioners beyond their certifying to the map of the surveyor.

It was also urged, on the argument of these cases, that the lots were not assessed according to the benefits received. The principle which controlled the judgment of the commissioners is not stated by them. If they adopted

Rutan v. Hopper.

an arbitrary scale for the whole line of the avenue which came under the improvement, their assessment is manifestly erroneous for that cause. It can hardly be assumed that in the length of more than a mile of street no lots were benefited more than others, and that the quantity of earth and rock removed from the front of each lot, or of earth placed before it, can be the proper criterion of the estimate of the benefit which such lot would receive from so expensive an improvement.

The assessment is so erroneous, and has been made upon so many illegal principles and rules of action in each case, that they all must be set aside.

The court will appoint new commissioners, under the 47th section of the charter, to examine into and report, according to the requirements of the 42d section, an assessment for the payment of the expenses of the said improvement.

A rule to that effect should be entered in each of the cases in which *certioraris* were allowed by the court, it having been agreed, before the argument, that the opinion of the court in these two cases should decide all of the others.

CITED *in State* v. *Jersey City*, 4 *Dutch.* 506 ; *State* v. *Hudson City*, 5 *Dutch.* 475 ; *Reversed*, 5 *Dutch.* 475 ; *Phillips* v. *City of Hudson*, 2 *Vr.* 149 ; *State* v. *Gardner*, 5 *Vr.* 331 ; *State* v. *Jersey City*, 6 *Vr.* 386 ; *State* v. *Newark*, 7 *Vr.* 172 ; *State* v. *Mayor, &c., of Paterson*, 8 *Vr.* 382, 411 ; *Paret* v. *Bayonne,* 10 *Vr.* 564.